583 So.2d 129 (1991)
STATE of Louisiana
v.
Carlos MORALES.
No. 90-KA-1204.
Court of Appeal of Louisiana, Fourth Circuit.
June 27, 1991.
*130 Harry F. Connick, Dist. Atty., Charmagne Padua, Asst. Dist. Atty., New Orleans, for plaintiff.
Dwight Doskey, Orleans Indigent Defender Program, New Orleans, for defendant.
Before BARRY, WILLIAMS and PLOTKIN, JJ.
PLOTKIN, Judge.
Based on information obtained from a confidential informant, and from information gathered during a surveillance operation, the police stopped a car driven by Alfredo Serantes in which defendant Carlos Morales was the only passenger. At that time, the police discovered a small package of white powder, later identified as cocaine, on the floor of the car near Morales' feet. Both men were charged with possession of cocaine with the intent to distribute. Following the denial of a motion to suppress the evidence, Serantes moved for a continuance. The motion was granted and Morales proceeded to trial alone. The jury found him guilty of attempted simple possession.

Facts:
Officer Eddie Selby, a narcotics officer with the N.O.P.D. received a telephone call from a confidential informant (CI) regarding a cocaine delivery. The informant claimed to have been present during a phone conversation between unknown individuals. The CI deduced from listening to the response of the party he was with that two Spanish males from Miami were in New Orleans for the express purpose of bringing a large quantity of cocaine into the city. He reported that they were staying at the La Quinta Motel on Crowder Blvd. and that they were driving a nondescript, blue Mercury automobile. Armed with this information, the police set up a surveillance of the motel. They discovered a blue Mercury with Dade County, Florida plates in the parking lot of the motel. A *131 motor vehicle check showed the car to be registered to an Alfredo Serantes.
Early on in the surveillance, the police observed a hispanic male, later identified as Andreas Costillio, pull into the parking lot and walk up to room 237. When the door opened, the police noticed two men in the room. The visitor entered the room, stayed briefly and left. As Costillio left, the police decided to question him. There is no evidence that this was a forcible stop or that Costillio contested being detained. According to the testimony of Officer Selby, Costillio told them that he had been to visit Serantes who was alone in the motel room, and that the room belonged to Serantes who had arrived at the motel in a blue Mercury. The officers then checked with the desk clerk who informed them that room 237 was registered in the name of Mr. Costillio, and that there were two individuals inside instead of just one as reported by Costillio.
The next morning, the police observed Serantes and Morales prepare to leave. The two men appeared to be nervously looking around the parking lot. They began to load the Mercury with luggage and an ice chest. Officer Selby testified that it was common practice for drug carriers to use an ice chest en route to avoid having to make frequent stops on the highway. The police followed as the Mercury drove towards the entrance ramp to I-10. When the car turned towards the city instead of East towards Florida, the police decided to make the stop.

Assignment of Error:
In his sole assignment of error, defendant complains the trial court erred in denying his motion to suppress and in not allowing full cross-examination during the hearing on the motion to suppress. First, defendant argues that the stop of Costillio was illegal and that he has standing to contest that stop. Second, he argues that the information obtained from the confidential informant was insufficient to give the police probable cause. Third, defendant argues that he should have been allowed to ask whether the informant could speak Spanish so that it could be determined whether the informant could have overheard a conversation which may have been held with either defendant or Serantes for whom Spanish was the language of choice.
With respect to the stop of Costillio, there is nothing in the record to indicate that the stop was unlawful or unconstitutional. The Supreme Court has acknowledged the right of police officers to stop and question a person whom they suspect may be involved in criminal activity without actually having probable cause to make an arrest. Terry v. Ohio, 392 U.S. 1, 10, 88 S.Ct. 1868, 1874, 20 L.Ed.2d 889 (1968). The Fourth Amendment protects individuals from unreasonable searches and seizures, but defendant offers no evidence that Costillio's questioning constituted "seizure". According to the Court, seizure occurs only when an officer, by means of physical force or show of authority, has in some way restrained the freedom of the individual. Id. at 16, 88 S.Ct. at 1877. The United States Supreme Court recently further clarified the law on "seizure" in California v. Hodari D., ___ U.S. ___, 111 S.Ct. 1547, 113 L.Ed.2d 690 (1991), stating that, when there is no assertion of physical force, no "seizure" occurs until the subject submits to the "showing of authority." Id. at ___, 111 S.Ct. at 1551. Absent any evidence that the police either exerted physical force to restrain Costillio or that Costillio submitted to a "showing of authority", there is no basis for complaint. Since there is no such evidence in the record, the defendant's claim is without merit.
Defendant questions the reliability of informant's tip claiming that it was of no predictive valuethat the conversation overheard merely stated innocent facts. The tipster in the case at bar was not merely an anonymous source, but an informant who had provided reliable information in the past which had led to arrests and convictions. The Supreme Court has noted that a case involving a known informant presents "a stronger case than obtains in the case of an anonymous telephone tip." Adams v. Williams, 407 U.S. 143, 146, 92 S.Ct. 1921, 1923, 32 L.Ed.2d 612 (1972). *132 The Court has applied a "totality of the circumstances approach" which considers an informant's veracity, reliability and basis of knowledge as highly relevant in determining the value of an informant's tip. Illinois v. Gates, 462 U.S. 213, 214, 103 S.Ct. 2317, 2320, 76 L.Ed.2d 527 (1983).
However, the unverified tip alone might not have been sufficient to establish reasonable cause for the stop of the defendant. The Supreme Court has held that such a tip, when corroborated by independent police work, may exhibit sufficient indicia of reliability to justify stopping the suspects. Alabama v. White, ___ U.S. ___, ___, 110 S.Ct. 2412, 2417, 110 L.Ed.2d 301 (1990). In a case similar to the one at bar, the Louisiana Fifth Circuit Court of Appeal found that police officers' surveillance of a hotel sufficiently corroborated information given to one of the officers by a confidential informant concerning a drug transaction to give the officers reasonable cause to make an investigatory stop of defendant's vehicle. State v. Rosales, 537 So.2d 850 (La.App. 5th Cir.1989). The court stated:
Here the officers' visual observation corroborated the identifying information provided them by the informant. Although their surveillance alone did not corroborate the illegal possession of narcotics, it gave reasonable grounds for them to believe that remaining unverified bit of information was likewise true. Draper v. United States, 358 U.S. 307, 79 S.Ct. 329 [3 L.Ed.2d 327] (1959).... A law enforcement officer may stop a person in a public place whom he reasonably suspects is committing, has committed, or is about to commit an offense. LSA-C.Cr.P. art. 215.1(A). Reasonable cause for such an investigatory stop is something less than probable cause and must be determined under the facts of each case ... Based on both the informant's tip and their own observations, the officers here had reasonable cause for an investigatory stop.
Id. at 852-53.
Because the information given to the officers by the confidential informant in the instant case was sufficiently corroborated by the information gained by the officers in the surveillance, the officers had reasonable cause to stop the car in which the defendant was riding. The confidential informant, whose tips had previously been reliable, told the police that two Spanish males driving a blue Mercury would be delivering cocaine at the La Quinta Motel on Crowder Blvd. on a certain day. When the officers observed a vehicle fitting that description at the location and on the date the informant specified, the information was corroborated. Additionally, the police officers observed activities consistent with drug sales. Therefore, this assignment of error has no merit.
Defendant's third argument for reversing the denial of his motion to suppress the evidence is that he was not permitted to cross-examine Officer Selby as to whether the CI spoke Spanish and thereby establish the reliability, or lack thereof, of the tip. The trial court sustained the State's objection when defendant's counsel asked whether the informant spoke Spanish. The State did not give the basis for its objection, and the trial court did not state why it sustained the objection. There is nothing in the record to show that the exclusion of this particular evidence prejudiced the substantial rights of the defendant. While it is true that Spanish was the language of choice for both the defendant and Serantes, there is no testimony to the effect that either the defendant or Serantes was a party to the conversation which was overheard by the CI. Therefore the informant's ability to speak Spanish is irrelevant.
Because the police officers' surveillance of the La Quinta motel corrorborated enough of what they learned from the confidential informant to give reasonable cause to stop defendant, the evidence obtained as a result of the stop was not inadmissible and the trial court correctly denied defendant's motion to suppress.
For the above and foregoing reasons, the trial court's judgment denying the defendant's *133 motion to suppress the evidence is affirmed.
AFFIRMED.
BARRY, Judge, concurs with reasons.
The concept of seizure in criminal law has recently undergone change. The concept that a seizure occurs when there is physical force or a show of authority which in some way restrains the freedom of an individual (Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)) is no longer a correct statement of the law. In California v. Hodari, ___ U.S. ___, 111 S.Ct. 1547, 113 L.Ed.2d 690 (1991) the United States Supreme Court held that no seizure occurs when a police officer attempts to apprehend a suspect with a "show of authority" without physical force and the suspect does not submit.
It is clear from the officers' testimony at the motion to suppress hearing and at trial that they stopped Costillio in his car after he left a motel room which was under surveillance. Officer Selby testified at the motion to suppress hearing: "A determination was made at that time to stop the subject...." The officer stated that "[t]hrough a conversation with Mr. Costillio" certain information was learned about the subject remaining in the motel room and that he was driving a blue Mercury, which tied in with the officer's confidential informer's information. Officer Selby stated that after the conversation: "The subject was allowed to go."
On cross-examination the officer stated as to Mr. Costillio: "He was stopped and questioned." When defense counsel asked whether the officers were trying to corroborate the information they had received from the informant, Officer Selby stated: "I guess you could say that." However, the officer stated that Costillio was not under investigation and was not searched. When asked whether his background was checked, he stated that the officers learned his address. According to Officer Selby's testimony the officers learned more than that.
At trial Officer Selby stated (as to Costillio's stop) that based on information provided by the confidential informant as to Spanish male activity, "we decided to stop the vehicle after it was some ways [sic] away from the apartment complex.... The vehicle was stopped and the driver of the vehicle [Costillio] was interviewed." On defense cross-examination on the predicate (qualification of Officer Selby as an expert in trafficking) the officer stated that Costillio was not an informant, but a participant, whose information was incorrect.
Officer Williams, the other officer on the surveillance, testified at trial: "We elected to stop Mr. Castillio [sic] and interview him to try and resolve the information which we had received. Once stopping him, the information we learned from Mr. Castillio [sic], we went back and started watching Room 237 along with a blue Mercury."
My concern is that the majority merely states that there is nothing in the record to indicate this stop was unlawful or unconstitutional.
However, because defense counsel did not elicit sufficient facts to indicate clearly that a Terry stop was made and Costillio subjected to questioning far beyond permissible range, the inquiry need go no further into standing and the suspect's constitutional rights.